414 A.2d 1060
COMMONWEALTH of Pennsylvania,

v.

Montino ANDERSON, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 6, 1979

Filed Nov. 9, 1979.

John F. Street, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Division, Philadelphia, for Commonwealth, appellee.

Before WATKINS, MANDERINO and CIRILLO, JJ.*

CIRILLO, Judge:

The defendant was convicted after a jury trial, and was sentenced to life imprisonment for murder in the first degree. The defendant filed a motion to suppress a gun and a knife which were seized at his residence. The motion to suppress was granted as to the gun, but denied as to the knife. The pre-trial suppression judge determined that the knife was legally seized pursuant to the defendant's step-father's consent. After the trial by jury, post-trial motions in arrest of judgment and for a new trial were filed, argued, and denied. The defendant has appealed.

The facts of the case follow. On October 5, 1976, at approximately 11:30 p. m., the deceased, Anthony Dean, was at a pool hall with his uncle, Mr. Betts. An argument erupted between Mr. Betts and Mr. Fortune, a co-defendant. Mr. Fortune left the pool hall, only to return ten minutes later with the defendant and a third person, identified only as "Al". Mr. Fortune then called Mr. Betts out of the pool hall to continue the argument. Mr. Fortune began to beat

---

* Justice LOUIS L. MANDERINO of the Supreme Court of Pennsylvania, and Judge VINCENT A. CIRILLO of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

Mr. Betts as he exited from the pool hall, knocking him to the ground. As Mr. Fortune was about to kick Mr. Betts, Anthony Dean came to the aid of his uncle. As Anthony Dean pushed Mr. Fortune away from his uncle, the defendant stabbed Anthony Dean in the back, causing his death. The facts of the stabbing were presented by three eyewitnesses. Evidence was presented that, after the stabbing, the defendant had been a fugitive for two months.

The defendant has raised six issues. It is only necessary to address two of these issues because the case will be remanded to the lower court for a new trial.

The first issue is whether the suppression judge erred in denying defendant's application to suppress all the physical evidence which was found in the defendant's bedroom.

On October 6, 1976, at approximately 7:15 a. m., Detective Miller, accompanied by another detective and two uniformed police officers, went to the defendant's residence. Detective Miller testified that he had received certain information from several witnesses to the stabbing that the defendant was the alleged perpetrator of the crime. Neither Detective Miller nor the other officers possessed an arrest or search warrant at the time they went to the defendant's residence.

Detective Miller identified himself to the defendant's step-father who owned the house. Detective Miller told the step-father that the police officers were in search of the defendant for murder. The step-father directed the officers to a second floor middle bedroom. The police officers looked under the bed and seized a gun. Detective Miller then found a knife under the defendant's mattress.

"Government [officials] may not obtain a consent to search on representation that they intend to look only for certain specified items and subsequently use that consent as a license to conduct a general exploratory search." *United States v. Dichiarinte*, 445 F.2d 126, 129 (7th Cir. 1971).

In the immediate case, the police officers told the defendant's step-father that they were searching for the defendant, not for a weapon or weapons.

"Whenever practicable, the police must obtain advance judicial approval of searches and seizures through warrant procedure, and the failure to comply with the warrant procedure can only be excused by exigent circumstances." *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, quoted in *Commonwealth v. Cockfield*, 431 Pa. 639, 643, 246 A.2d 381, 383 (1968) app. after remand 465 Pa. 415, 350 A.2d 833 (1976).

 Even with probable cause to arrest the defendant based on the information given by the three eyewitnesses to the stabbing, "mere probable cause does not provide the exigent circumstances necessary to justify a search without a warrant." *United States v. Rubin*, 474 F.2d 262, 268 (3rd Cir. 1973).

There is no indication from the record

"Whereby the agents might reasonably have believed that [they were] confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." *Schmerber v. California*, 384 U.S. 757, 770, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966), quoted in *United States v. Wilcox*, 357 F.Supp. 514, 519 (E.D.Pa., 1973).

The presence of persons in the house other than the defendant, does not of itself justify an inference that evidence will be destroyed or removed. *United States v. Wilcox*, supra, 520. If there was a fear that one of the weapons would be removed by the step-father, then one of the officers could have remained to guard the premises while the others obtained a warrant. Therefore, the knife found in the defendant's bedroom should have been suppressed.

The second issue is that although the knife was not introduced by the Commonwealth in its case in chief, it was introduced into the case to impeach the testimony of the defendant who had testified that he did not stab the deceased. It was not established that the illegally seized knife was the murder weapon. At this point, the Commonwealth exhibited the knife to the jury. Defense counsel objected at this time; and the objection was overruled. The Assistant

District Attorney pointed out that the width of the blade of the knife at its widest part was five-eighths of an inch wide. The Assistant District Attorney also stated that the exact width of the entrance wound was the same width as the knife; therefore, leading the jury to believe that the illegally seized knife was the murder weapon.

"As we read *Mapp* [(*Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081) parentheses ours], its decisional point is that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a State Court." (p. 655, 81 S.Ct. p. 1691), such rule of exclusion being ". . . an essential part of both the Fourth and Fourteenth Amendments . . ." (p. 657, 81 S.Ct. p. 1693). The Fourth Amendment protects and preserves "the right of the people to be secure in their persons, houses, papers and effects, against *unreasonable* searches and seizures" and, in implementation thereof, *Mapp* prohibits the use *in State Courts* for any purpose whatsoever of evidence obtained by *unreasonable* searches and seizures." *Commonwealth v. Bosurgi*, 411 Pa. 56, 64–65, 190 A.2d 304, 309 (1963).

While the exclusionary rule "absolutely prohibits the prosecution from making affirmative use of [illegally seized evidence to convict], it does not exclude its use under certain circumstances, to discredit the defendant's voluntary testimony." *Commonwealth v. Wright*, 415 Pa. 55, 59, 202 A.2d 79, 81 (1964). "But such evidence may not be used merely because the defendant takes the stand and denies the commission of the crime." *Commonwealth v. Wright*, supra, 415 Pa. 59, 202 A.2d 81.

"To make such evidence available for impeachment purposes and thereby constitute a waiver by the defendant of his constitutional protection against its use, three conditions are essential: (1) the defendant must elect to take the stand; (2) his testimony which conflicts with the illegally secured evidence must do more than deny the elements of the crime for which he is being tried; (3) the inadmissible evidence should be received only to the extent that it does not admit the very acts which are

essential elements of the crime charged." *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), as quoted in *Commonwealth v. Wright,* supra, 415 Pa. 60, 202 A.2d 81.

The defendant's testimony did not meet the second requirement of the *Walder* test. The defendant testified that he did not stab Anthony Dean. His testimony did no more than deny the elements of the crime.

Therefore, since the illegally seized knife was brought into evidence by the Commonwealth, and the jury was given the opportunity to infer that the illegally seized knife was the murder weapon, we hold that this was prejudicial to the defendant.

Reversed and remanded to the lower court and new trial granted.

MANDERINO, J., files concurring opinion.

MANDERINO, Judge, concurring:

I agree with the majority that the judgment of sentence must be reversed and a new trial granted. The prosecution should not be permitted to introduce illegally obtained evidence at trial for *any* reason. *See Commonwealth v. Triplett,* 462 Pa. 244, 341 A.2d 62 (1975).