521 A.2d 44

**COMMONWEALTH of Pennsylvania**

v.

**Scott A. WEIK, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 24, 1986.

Filed Feb. 10, 1987.

Peter D. Maynard, Reading, for appellant.

Rosamond A. Presby, Assistant District Attorney, Lebanon, for Com., appellee.

Before TAMILIA, HOFFMAN and HESTER, JJ.

HOFFMAN, Judge:

This is an appeal from the judgment of sentence for maintaining a slot machine for gambling purposes, 18 Pa.C.S.A. § 5513(a)(1). Appellant contends that the lower court erred in refusing to suppress evidence seized by police following a warrantless entry into a building on his property. We agree and, accordingly, vacate the judgment of sentence and remand for a new trial.

Appellant was charged with maintaining a slot machine for gambling purposes, in violation of 18 Pa.C.S.A. § 5513(a)(1). Prior to trial, appellant moved to suppress the slot machine that was seized pursuant to a warrantless entry of a building on his property. The motion was denied, and appellant was later found guilty following a jury trial. Appellant was sentenced to a twenty-three-month term of probation, and this appeal followed.

The scope of our review of the denial of a motion for suppression of evidence is firmly established. The suppression court must make findings of fact and conclusions of law in determining whether evidence was obtained in violation of the defendant's rights. The burden of proving the admissibility of the evidence lies on the Commonwealth's shoulders; the standard by which the court determines the legitimacy of the search and seizure, and hence the admissibility of the evidence whose suppression has been moved, is that of the preponderance of the evidence.... On appeal we must determine whether the record supports the factual findings of the suppression court, as well as determine the reasonability of any inferences and legal conclusions drawn from the court's findings of fact....

In considering whether the record supports the court's finding [sic] of facts we must restrict ourselves to reviewing the evidence presented by the Commonwealth and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.... In addition, where the suppression court's findings are amply supported by the record they may not be disturbed on appeal....

*Commonwealth v. Eliff,* 300 Pa.Superior Ct. 423, 428–29, 446 A.2d 927, 929–30 (1982) (citations omitted). *See also Commonwealth v. Rispo,* 338 Pa.Superior Ct. 225, 227–28, 487 A.2d 937, 938 (1985).

Viewed in the light most favorable to the Commonwealth, the facts are as follows:

In the early morning hours of April 28, 1985, two North Lebanon Township police officers saw a bonfire on appellant's property. Suspecting that the fire was in violation of a local ordinance, the officers returned to the police station, discovered that appellant did not have a permit for such a fire, and determined that he was in violation of the ordinance. The officers therefore returned to appellant's property, saw that the fire was still burning, and entered onto the property to tell appellant to extinguish it. A house, a

detached garage, and a detached shed are located on appellant's property. As they approached, the officers saw appellant walk away from the fire and enter the shed. There were windows in the shed which were not covered by curtains. Through the uncovered windows, the officers saw three slot machines against a wall, and saw a companion of appellant attempting to cover the machines. Appellant then walked out of the shed and approached the officers. The officers told appellant that they were there to investigate the fire, but that they had also seen the slot machines. The officers then announced that they were going in to take a closer look at the machines and, over appellant's objection, entered the shed and seized the machines.

■ Appellant contends that his fourth amendment rights were violated when the police officers entered his building without a warrant and seized his slot machines. "In general, where practical the police are required to obtain a search warrant. Warrantless searches are *per se* unreasonable, subject only to a few, limited exceptions." *Commonwealth v. Gabrielle*, 269 Pa.Superior Ct. 338, 344–45, 409 A.2d 1173, 1177 (1979) (citations omitted). *See also Commonwealth v. Holzer*, 480 Pa. 93, 102, 389 A.2d 101, 106 (1978); *Commonwealth v. Rispo, supra,* 338 Pa.Superior Ct. at 230, 487 A.2d at 939; *Commonwealth v. Morrison*, 275 Pa.Superior Ct. 454, 457, 418 A.2d 1378, 1379 (1980) (en banc). When police officers who are "justifiably at the scene [see] contraband in plain view," however, the observation "is not a search within the meaning of the Fourth Amendment.... [and] no warrant is required." *Commonwealth v. Getz*, 236 Pa.Superior Ct. 469, 472, 344 A.2d 686, 687 (1975) (citations omitted).

The Commonwealth argues, and the lower court held, that the warrantless seizure here was lawful because the officers were legitimately on appellant's property, and then saw the machines in plain view. "Under the plain view doctrine, the cases fall into two distinct categories." *Com-*

*monwealth v. Chiesa,* 329 Pa.Superior Ct. 401, 405, 478 A.2d 850, 852 (1984). The first line of cases

> involves those situations in which the "view" takes place *after* an intrusion into a constitutionally protected area. Under this line of cases if the original intrusion is justified, such as by consent, hot pursuit, warrant or other, objects sighted in plain view will be admissible, ... so long as the view was inadvertent.

*Commonwealth v. Adams,* 234 Pa.Superior Ct. 475, 479, 341 A.2d 206, 208 (1975) (emphasis in original) (citations omitted). *See also Commonwealth v. Chiesa, supra.* The second line of cases

> involves situations where the view takes place *before* any intrusion into a constitutionally protected area. These cases are distinguishable from the first line of cases in two respects. First, because no intrusion into a constitutionally protected area takes place, fourth amendment rights are not involved and the requirement that the view be inadvertent is not applicable. Secondly, the warrantless seizure of evidence cannot be justified by the plain view alone....
>
> It is generally held that the mere looking at that which is open to view is not a search.... [Thus,] [i]n those situations in which no intrusion into a constitutionally protected area occurs, no search is made....
>
> *The second distinction in this line of cases is that the warrantless seizure of evidence cannot be justified by the plain view alone.* This was clearly stated in *Coolidge v. New Hampshire,* [403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)]. "[P]lain view *alone* is never enough to justify the warrantless seizure of evidence.... [E]ven where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure." *Id.* at 468 (emphasis in original). *Thus, in those cases in which the view precedes an intrusion into a constitutionally protected area the officer must be able to rely upon exigent circumstances ... or he must obtain a warrant before*

*he seizes the evidence....* This rule is contrary to the rule in the after-intrusion line of cases. In those cases because the justifiable intrusion already has occurred, no further intrusion is occasioned by the seizure of evidence which is in plain view and the seizure is permitted without more.... In the pre-intrusion view cases no intrusion is occasioned by the view and *the intrusion necessary to seize evidence must be justified by a warrant or one of the exceptions to the warrant requirement....*

*Commonwealth v. Adams, supra,* 234 Pa.Superior Ct. at 480–82, 341 A.2d at 210–11 (emphasis added) (citations omitted). In applying the above guidelines, we must keep in mind that

the application of Fourth Amendment coverage must often be analyzed separately with respect to the initial observation and subsequent seizure of the same article. Thus, while the visual observation of an article may not violate any reasonable expectation of privacy, and thus obviate the application of the Fourth Amendment, the seizure of the same article may trigger the protection of the Fourth Amendment.

*Commonwealth v. Milyak,* 508 Pa. 2, 6, 493 A.2d 1346, 1348 (1985) (citations omitted).

In summary, then, analysis of the lawfulness of the seizure in the instant case requires us to determine whether the record supports the suppression court's findings that (1) the police had legitimate reason to be on appellant's property when they viewed the machines; (2) their sighting of the machines falls under the plain view doctrine; and (3) the subsequent entry and seizure of the machines was lawful under the plain view doctrine. Here, upon review of the suppression testimony, we agree with the Commonwealth and the lower court that the officers were legitimately on the premises and that, once the officers were on appellant's property, they saw the machines in plain view. We find, however, that the lower court erred in assuming that the officers' mere sighting of the machines justified the subse-

quent warrantless entry into the shed and seizure of the slot machines.

■ On the night in question, the officers had reason to believe that appellant was in violation of a local ordinance which prohibits the burning of recreational fires at night. N.T. August 6, 1985 at 5–6. They then properly entered upon appellant's property to enforce the ordinance. *Id.* at 6. Once the officers were thus legitimately on the premises to enforce the ordinance, they saw, from a distance of about fifty feet, *id.* at 29, the slot machines, which were plainly visible through the uncurtained window in the shed. *Id.* at 7. Because the officers were lawfully in position to make this view, the observation was not an "intrusion into a constitutionally protected area," *Commonwealth v. Adams, supra,* and thus was not a search within the meaning of the fourth amendment.

Our finding that the initial observation was proper does not end our analysis of the legality of the entry and seizure, however. *Commonwealth v. Milyak, supra.* Because the officers' observation of the machines occurred *before* their intrusion into appellant's shed, this case falls within the second category of cases outlined in *Commonwealth v. Adams, supra.* Accordingly, the warrantless seizure cannot be justified by the plain view doctrine alone; rather, the seizure here is justifiable only if exigent circumstances excuse the officers' failure to get a warrant. *Id.*

The lower court did not address the question whether exigent circumstances existed to justify the officers' failure to obtain a search warrant. The Commonwealth argues, however, that exigent circumstances did exist because: (1) the machines were evidence of a crime; (2) they were highly mobile; (3) people on the property attempted to hide the machines; and (4) the "incident had the potential for developing into an ugly scene." Brief of the Commonwealth at 7. We disagree.

Exigent circumstances arise only "where the need for prompt police action is imperative, either because evidence sought to be preserved is likely to be destroyed or secreted

from investigation, or because the officer must protect himself from danger to his person by checking for concealed weapons." *Commonwealth v. Holzer, supra,* 480 Pa. at 102, 389 A.2d at 106 (footnote omitted). *See also Commonwealth v. Rispo, supra,* 338 Pa.Superior Ct. at 230–31, 487 A.2d at 939; *Commonwealth v. Hinkson,* 315 Pa.Superior Ct. 23, 27, 461 A.2d 616, 618 (1983) (allocatur denied). The burden is on the Commonwealth to "present clear and convincing evidence that the circumstances surrounding the opportunity to search were truly exigent ... and that the exigency was in no way attributable to the decision by the police to forego seeking a warrant." *Commonwealth v. Davis,* 270 Pa.Superior Ct. 202, 206, 411 A.2d 250, 252 (1979). *See also Commonwealth v. Rispo, supra,* 338 Pa.Superior Ct. at 231, 487 A.2d at 940. Moreover, "[a]ll decisions made pursuant to the exigent circumstances exception must be made cautiously, for it is an exception which by its nature can very easily swallow the rule unless applied in only restricted circumstances." *Commonwealth v. Daniels,* 280 Pa.Superior Ct. 278, 286, 421 A.2d 721, 725 (1980).

■ Here, a review of the suppression testimony convinces us that the Commonwealth did not meet its burden of showing that an exigency existed. Two officers entered upon appellant's property to investigate the bonfire. One of the officers, Kim Wolfe, testified in detail about the entry of the shed. Wolfe testified that, shortly after he saw the machines in the shed, appellant exited the shed and approached the patrol car. N.T. August 6, 1985 at 7. Wolfe met appellant and "told him that the reason we were there was relative to the fire that was burning on his property. However, I then mentioned that I had observed slot machines inside the shed." *Id.* Wolfe continued that:

I told [appellant] that I was going to be going into the shed because I had observed them from outside the shed to inspect the machines more closely. At that time, I walked towards the shed to enter through the door and I met with objection from [appellant] at that time.

\* \* \* \* \* \*

> Although [appellant] objected to my going into the shed, I told him that I would be going into the shed. I entered the shed followed by [appellant] and Patrolman Leahy.

*Id.* at 8. Once in the building, Wolfe uncovered the machines and "announce[d] ... that I would be confiscating the machines." *Id.* at 8–9. On cross-examination, Officer Wolfe admitted that, at the time he seized the machines, he did not know if they were operable, and thus seized them only "because of a possibility that they were being used illegally as gambling devices." *Id.* at 23. The officer further admitted that he made no attempt to obtain a search warrant, even though he was aware that a district justice was available to issue one, his car and radio were operable, and another officer was with him and available to remain on the premises until he obtained a search warrant. *Id.* at 33–34. In addition, the officer admitted that he never requested backup police units to help secure the premises while he obtained a search warrant, even though he was aware that such units were available on the night in question. *Id.* at 45–47. Finally, the officer admitted that he did not have appellent's consent to enter the building. *d.* at 44.

There is no evidence on this record that the police officers would have been endangered if they had not entered promptly. The crime that was involved was not a violent one, and, at the time the police entered, there was no indication that appellant or anybody else on the premises was armed or presented any danger to the officers. The instant case is thus distinguishable from prior cases where we have found exigent circumstances based on the existence of some threat or danger to police officers or the public. *See, e.g., Commonwealth v. Maxwell*, 505 Pa. 152, 163, 477 A.2d 1309, 1315 (1984) (exigent circumstances exist where police have reason to believe that there is a life-threatening emergency); *Commonwealth v. Curry* 343 Pa. Superior Ct. 400, 408, 494 A.2d 1146, 1150 (1985) (exigent circumstances exist where police investigate dangerous shooting incident which had just occurred, and where police

find gun while securing premises after arresting defendant on porch); *Commonwealth v. Hinkson*, 315 Pa.Superior Ct. 23, 28–29, 461 A.2d 616, 618–19 (1983) (exigent circumstances exist where man is shot in front of appellant's house, appellant has reputation for using guns, only two of five shots fired are accounted for, other family members present in house, and thus police could conclude that person in house may be hurt, or hostage situation may exist).

There is a similar lack of evidence that there was a likelihood that, if the officers did not seize the machine immediately, it could have been destroyed or secreted from investigation. The Commonwealth's argument that such a likelihood existed amounts to no more than an assertion that, because the machines were mobile, and because people were on the premises, the evidence could have been removed while the officers obtained a search warrant. This Court has answered the Commonwealth's argument in *Commonwealth v. Anderson*, 272 Pa.Superior Ct. 167, 414 A.2d 1060 (1979) where we held both that "[t]he presence of persons in the house other than the defendant, does not of itself justify an inference that evidence will be destroyed or removed," and that, "[i]f there was a fear that [evidence] would be removed by [someone in the house], then one of the officers could have remained to guard the premises while the [other] obtained a warrant." *Id.*, 272 Pa.Superior Ct. at 171, 414 A.2d at 1062. *See also Commonwealth v. Rispo, supra,* 338 Pa.Superior Ct. at 236, 487 A.2d at 942–43 (exigent circumstances do not exist where, even though persons are present on premises, the residence could be watched while police obtained warrant, and there was no evidence that emergency existed whereby evidence might be destroyed while police obtained warrant). Here, two police officers were present and Officer Wolfe admitted that backup units were available should the officers need more help in securing the premises. Thus, we conclude that the police officers could easily have prevented evidence from being destroyed while they obtained a search warrant.

In short, the Commonwealth failed to introduce any evidence that there was a threat of danger to the public or to

police if the officers did not act immediately, nor did the Commonwealth show that the slot machines were likely to be destroyed or secreted while the officers obtained a warrant. Accordingly, we hold that the warrantless entry into appellant's building and seizure of the slot machine was not justified by exigent circumstances. Because the machine was seized in violation of appellant's constitutional rights, it should have been suppressed by the lower court. *See Commonwealth v. Johnson,* 474 Pa. 512, 520, 379 A.2d 72, 75 (1977); *Commonwealth v. Rispo, supra.*

For the foregoing reasons, we vacate appellant's judgment of sentence and remand for a new trial.[1]

Vacated and remanded. Jurisdiction is relinquished.

---

1. Appellant also contends that the verdict was contrary to the evidence. Appellant attempted to raise this issue with the following, boilerplate statement: "1. The verdict was contrary to the evidence." Motion For New Trial Or Arrest Of Judgment at 1. Because the motion does not say why or in what respect the verdict was contrary to the evidence, appellant has not preserved this issue for appellate review. *See Commonwealth v. Holmes,* 315 Pa.Superior Ct. 256, 267–68, 461 A.2d 1268, 1274 (1983) (post-verdict motion will not preserve issue for appellate review unless it specifies in what respect verdict is contrary to evidence).

Appellant last contends that he is entitled to a new trial because the verdict resulted from prosecutorial misconduct. Because we have held that appellant is entitled to a new trial because the lower court should have suppressed the evidence seized from his shed, we need not address this contention.