**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Carl Leverne NEWTON, Appellant.**

Superior Court of Pennsylvania.

Submitted July 30, 2007.
Filed Dec. 31, 2007.
Reargument Denied March 11, 2008.

Mark W. Bufalino, West Pittston, for appellant.

Frank P. Barletta, Asst. Dist. Atty., Wilkes–Barre, for Com., appellee.

BEFORE: TODD, KELLY, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶1 Carl Leverne Newton appeals the judgment of sentence imposed following his conviction of Possession of a Controlled Substance, Possession With Intent to Deliver, and Possession of Drug Paraphernalia, 35 P.S. §§ 780–113(a)(16), (a)(30), (a)(32) (respectively). Newton contends that the trial court erred in denying his motion to suppress drug paraphernalia seized from his motel room after police observed it in plain view when Newton opened the door. Newton argues that the officers entered the room without his consent and that their seizure of the paraphernalia was thereby rendered illegal. We find Newton's assertion meritorious and therefore reverse the judgment of sentence.

¶2 These events transpired as police officers in Wilkes–Barre investigated Newton's purported sale of illegal drugs from his room at the Red Carpet Motel, 400 Kidder Street. The Red Carpet Motel was known to police as a high drug traffic area and, at the time of these events police were monitoring activity at the motel. The officers ventured to Newton's room at about 9:30 a.m., February 5, 2005, after they stopped a woman who exited the room on suspicion that she had just purchased drugs. The woman reported that Newton had, in fact, sold her drugs. The police then conducted what they characterized as a "knock and talk," a mere encounter that, ostensibly, Newton could have refused. Officers Michael G. Boyle, Jr., and Jeremy Sereyka knocked at Newton's door and when Newton answered, began to question him. According to the testimony of the officers, which the trial court found credible, the police did not immediately enter the room but instead asked Newton to step into the hallway. During that initial exchange, Officer Boyle saw a cylindrical object on a tabletop inside the door that appeared burned at the bottom and had a white substance caked on the side. The officer recognized the item as a measuring cup used to heat cocaine and arrested Newton. Officer Sereyka then transported Newton to police headquarters while Officer Boyle entered the room and seized the cup. He also asked Newton's companion, Rose Yanko, for consent to search the room. Yanko refused, stating that the room was Newton's and that any consent would have to come from him.

Approximately twenty to thirty minutes later, Officer Boyle received a telephone call from Officer Sereyka indicating that Newton had signed a written consent to a search of the room.

■ ¶3 Following his preliminary hearing, Newton filed a motion to suppress the evidence seized by Officer Boyle as the fruit of an illegal search. Nevertheless, the trial court, the Honorable Michael T. Toole, denied the motion, concluding that after viewing the cylindrical container in Newton's room, "the [o]fficer possessed probable cause to seize the item pursuant to the plain view doctrine, and to arrest the Defendant." Trial Court Opinion (T.C.O.), 3/27/07, at 3. Judge Toole also made an express finding that he found the officers' testimony credible and the testimony of Newton's witness, Rose Yanko, incredible. T.C.O., 3/27/07, at 4. Thereafter, the case proceeded to trial, and on September 13, 2006, a jury found Newton guilty as charged. Following the subsequent sentencing hearing, Judge Toole imposed an aggregate term of five to ten years' incarceration. Newton then filed this appeal, raising the following question for our consideration:

A. WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS THE PHYSICAL EVIDENCE?

Brief for Appellant at 2.

"Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error." *Commonwealth v. McClease*, 750 A.2d 320, 323 (Pa.Super.2000). Our scope of review is limited; we may consider "only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Maxon*, 798 A.2d 761, 765 (Pa.Super.2002). "Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts." *McClease*, 750 A.2d at 323–24 (quoting *In the Interest of D.M.*, 560 Pa. 166, 743 A.2d 422, 424 (1999)). *Commonwealth v. Reppert*, 814 A.2d 1196, 1200 (Pa.Super.2002) (*en banc*).

¶4 Viewing the testimony at the suppression hearing in light of these standards, we acknowledge the significance of the officers' respective recollections as accepted by Judge Toole. Officer Boyle testified that upon arriving at Newton's room at the Red Carpet Motel, he remained outside of the room and first viewed the heat-scorched cup from that vantage point. Notes of Testimony (N.T.) (Suppression), 9/13/06, at 6, 11–12. Upon viewing the cup, Officer Boyle then motioned Newton to come out of the room and had Officer Sereyka conduct a formal arrest. N.T. (Suppression), 9/13/06, at 9, 14. As Officer Sereyka led Newton away in handcuffs for the trip to the police station, Officer Boyle entered the room, seized the cup, and then began speaking with Rose Yanko. N.T. (Suppression), 9/13/06, at 9, 14. Officer Boyle conceded that he *did not* have consent to enter Newton's room at that time. N.T. (Suppression), 9/13/06, at 14. Only sometime later, after Newton had been in custody for about twenty to thirty minutes, did Officer Boyle receive a call that he had signed a consent allowing for a search of the motel room. N.T. (Suppression), 9/13/06, at 10–11, 19–20.

¶5 We find this scenario troubling. Both Officer Boyle's testimony and the trial court's opinion indicate that the police were licensed to enter Newton's room and seize the cup by virtue of Officer Boyle's

observation of the item "in plain view." The notion of a warrant or a demonstrated exception to the warrant requirement appears only as an afterthought, unnecessary due to Officer Boyle's assertion of probable cause. In this regard, both the police and the trial court erred.

■ ¶ 6 As a starting point, the determination of probable cause prior to the search of a constitutionally protected area is reserved for an impartial magistrate rather than the investigating officer. Indeed, this constraint on law enforcement is a bedrock principle of constitutional jurisprudence, whether under the Fourth Amendment or the Constitution of Pennsylvania. *See Commonwealth v. Reid,* 571 Pa. 1, 811 A.2d 530, 544 (2002) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)) ("[P]ursuant to the protections of the Fourth Amendment, before a police officer may conduct a search, he must generally obtain a warrant that is supported by probable cause and authorizes the search."); *Commonwealth v. Cockfield,* 431 Pa. 639, 246 A.2d 381, 383 (1968) (quoting *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) ("Whenever practicable, the police must obtain advance judicial approval of searches and seizures through warrant procedure....").

■■ ¶ 7 Moreover, the plain view doctrine, regardless of the circumstances under which it is applied, is not an exception to the warrant requirement; even in its most expansive application, plain view merely obviates the requirement of a warrant where circumstances demonstrate that one has already been obtained or a valid exception to the warrant requirement is established in the form of exigent circumstances or consent. Consistent with this constitutional polestar, our case law contemplates two scenarios in which an item observed in plain view may be seized by law enforcement officers. The first scenario arises when the officers' "view" of contraband or some illegal object occurs *after* they have first entered a constitutionally protected space and the intrusion was justified by consent, hot pursuit or a warrant. *See Commonwealth v. English,* 839 A.2d 1136, 1140 (Pa.Super.2003); *Commonwealth v. Weik,* 360 Pa.Super. 560, 521 A.2d 44, 46 (1987). Because the constitutional imperative of probable cause has been satisfied before an impartial magistrate or a clear exception has been shown, officers on the scene may seize the item they observed without further recourse to the warrant process. *See English,* 839 A.2d at 1140; *Weik,* 521 A.2d at 46.

■ ¶ 8 The second scenario arises when the officers' view occurs *before* they have physically entered the constitutionally protected area. *See English,* 839 A.2d at 1140; *Weik,* 521 A.2d at 46. Because the defendant's right to be free of unreasonable search and seizure has not yet been breached or evaluated by a magistrate, the warrant procedure must be carried out or the police must demonstrate the lawful exceptions of exigent circumstances or voluntary consent. *See English,* 839 A.2d at 1140; *see also Weik,* 521 A.2d at 46. This rule is contrary to the rule in the after-intrusion line of cases:

> [I]n this [pre-intrusion] line of cases ... the warrantless seizure of evidence cannot be justified by the plain view alone.... *Even where the object is contraband,* this Court has repeatedly stated and enforced the basic rule that *police may not enter and make a warrantless seizure.* Thus, in those cases in which the view precedes an intrusion into a constitutionally protected area, the officer must be able to rely on exigent circumstances ... or he must obtain a warrant before he seizes the evidence.

*English,* 839 A.2d at 1140 (quoting *Weik,* 521 A.2d at 46) (emphasis added, quotation marks omitted). Thus, under both rules officers seeking to exercise the plain view doctrine must satisfy the constitutional imperatives that ground the law of search and seizure and inform the issuance of a warrant.

¶ 9 The officers' testimony here establishes that those imperatives were not observed prior to Officer Boyle's seizure of the scorched measuring cup. Officer Boyle testified, and the trial court accepted, that the officers had not entered Newton's room when Officer Boyle first saw the heat scorched cup on the table inside the room. In fact, the officer's testimony established that upon seeing the cup, he called Newton out into the hallway and then directed Officer Sereyka to place the defendant under arrest and take him to the station. After Newton had departed, Officer Boyle entered the room to seize the contraband and to see if anyone else was inside. He acknowledged at the suppression hearing that he had not obtained consent to enter the room (or sought issuance of a warrant), believing that his plain view of drug paraphernalia inside licensed his entry of the room. Significantly, the record of the suppression hearing offers no suggestion that Officer Boyle perceived exigent circumstances. Indeed, even if he believed the disposal of the evidence to be an imminent possibility, his seizure of the evidence under these circumstances would not be excused. Our case law directs unequivocally that where an officer is available to monitor the protected area, he must do so pending the issuance of warrant prior to seizure. *See English,* 839 A.2d at 1142 ("[E]ven if we assume that the danger and destruction concerns are valid, both could have been addressed by either leaving one officer at the scene while the other secured the warrant or by relying on other patrol officers ... to

watch the residence."); *Weik,* 521 A.2d at 48 (quoting *Commonwealth v. Anderson* 272 Pa.Super. 167, 414 A.2d 1060, 1062 (1979)) ("[I]f there was a fear that [evidence] would be removed by [someone in the house], then one of the officers could have remained to guard the premises while the [other] obtained a warrant."). Nothing in the record suggests that Officer Boyle could not have remained in the vicinity of Newton's room pending the issuance of a warrant—in fact, he did remain there questioning Rose Yanko for a significant amount of time after he entered the room and seized the cup. Consequently, we conclude that the trial court erred in its conclusion that the police acted lawfully in seizing the drug paraphernalia at issue pursuant to the plain view doctrine.

¶ 10 Nevertheless, the Commonwealth asserts, and the trial court accepted, that Newton's execution of a written consent to search the room after he had been in custody at the police station for at least one-half hour necessarily vitiates the need for a warrant and renders the evidence seized admissible. Given the state of the record complied at the suppression hearing, however, we conclude that this conclusion too is in error.

¶ 11 We acknowledge, of course, that "[a] search warrant is not required ... where a person with the proper authority unequivocally and specifically consents to the search." *Reid,* 811 A.2d at 544 (citing *Florida v. Jimeno,* 500 U.S. 248, 250–51, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991)) (footnote omitted). The burden to prove such consent, however, rests upon the Commonwealth. *See Reid,* 811 A.2d at 545. "To establish a valid consensual search, the prosecution must first prove that the consent was given during a legal police interaction, or if the consent was given during an illegal sei-

zure, that it was not a result of the illegal seizure; and second, that the consent was given voluntarily." *Id.* at 544. In this instance, we have determined that Officer Boyle's seizure of the drug paraphernalia from Newton's room was, in the first instance, illegal. Although evidence of a valid consent would establish an exception to the warrant requirement, and thereby render the evidence seized admissible, the record compiled at the suppression hearing does not appear to contain sufficient evidence to establish such a consent.

> Where a court finds that a person was illegally seized before he allegedly consented to a search, any evidence obtained as a result of the search must be excluded from the evidence against the accused as fruit of the poisonous tree, i.e., the unlawful seizure, unless the prosecution can establish that the alleged consent was not a result of the illegal seizure. If the court finds that an illegal seizure preceded an alleged consent but the consent was not caused by the illegal seizure *or that a lawful interaction preceded an alleged consent,* the court must then determine whether the prosecution has adequately proven that *the consent was made voluntarily and was not the product of duress or coercion.*

*Id.* at 545 (emphasis added, citations omitted). Thus, even if we were to acknowledge the validity of Newton's arrest for possession of the drug paraphernalia that Officer Boyle saw through the open door of the motel room, the subsequent intrusion into the room and seizure of the cup would remain illegal pending proof by the Commonwealth that Newton had consented *voluntarily.* In this case, the transcript of the suppression hearing offers no testimony on this point, save for the recollection of Officer Sereyka that Newton signed the consent at the police station before he'd been placed in a holding cell.

N.T. (Suppression), 9/13/06, at 17–21. Sereyka's testimony, however, provides no detail concerning the surrounding interaction. Given the absence of this critical evidence, the Commonwealth failed to sustain its burden at the suppression hearing. *See Reid,* 811 A.2d at 546–48 (reaffirming requirement that court consider circumstances surrounding defendant's consent in determining whether consent was voluntary). The law of this Commonwealth makes amply clear that once a defendant is in custody, the voluntariness of his consent to search will not be assumed, but must be proven by the Commonwealth. *See id.* at 545; *see also Commonwealth v. Strickler,* 563 Pa. 47, 757 A.2d 884, 901 (2000) ("[T]he Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances."). Because the Commonwealth offered no such proof here, the trial court erred in finding the fruit of Officer Boyle's intrusion into Newton's room admissible at trial. The evidence seized should have been suppressed.

¶ 12 For the foregoing reasons, we reverse the judgment of sentence.

¶ 13 Judgment of sentence **RE-VERSED.** Case **REMANDED** for further proceedings consistent with this Opinion. Jurisdiction **RELINQUISHED.**