J-A14017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA

Appellee   :

  :

v.   :

  :

STEPHEN LEROY RIAL   :

  :

Appellant   :   No. 891 WDA 2020

Appeal from the Judgment of Sentence Entered August 17, 2020
In the Court of Common Pleas of Venango County
Criminal Division at No(s):  CP-61-CR-0000237-2019

BEFORE:  MURRAY, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY KING, J.:                    **FILED: JULY 27, 2021**

Appellant, Stephen Leroy Rial, appeals from the judgment of sentence entered in the Venango County Court of Common Pleas, following his bench trial conviction for possession with intent to manufacture or deliver a controlled substance ("PWID").[1]  We affirm.

The trial court opinion set forth the relevant facts of this case as follows:

> On August 7, 2018, Trooper Frank Malek was posted near [Appellant]'s property to assist in a search for a known person-not [Appellant]-who had stolen an ATV from a nearby residence.  During the course of the search for the ATV thief, Trooper Malek was following tracks in the woods near [Appellant]'s property, and at some point entered onto [Appellant]'s property.  After entering onto [Appellant]'s property, Trooper Malek smelled marijuana and saw several large marijuana plants growing at the edge of [Appellant]'s yard.

---

[1] 35 P.S. § 780-113(a)(30).

Trooper Malek saw that [Appellant] was standing on an elevated deck outside his home. Trooper Malek walked across [Appellant]'s yard, stopped near the deck upon which [Appellant] stood, and spoke with [Appellant]. There were other troopers near the perimeter of the property, but only Trooper Malek approached [Appellant], Trooper Malek advised [Appellant] that he was engaged in a search for the stolen ATV and that he had found the marijuana plants. [Appellant] responded that the plants were his and that he kept them for personal use. [Appellant] was not handcuffed or restrained prior to this interaction.

(Trial Court Opinion, filed October 16, 2020, at 1).

On April 22, 2019, Appellant filed an omnibus pre-trial motion to suppress. Following a hearing, the court denied Appellant's suppression motion on August 28, 2019. On August 17, 2020, after a stipulated bench trial, the court found Appellant guilty of PWID. On that same day, the court sentenced Appellant to 12 months' probation with a suspended sentence pending his anticipated appeal. Appellant timely filed a notice of appeal on August 24, 2020. On September 8, 2020, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied.

Appellant raises the following issue for our review:

Could the police use two exceptions as an excuse for seizing marijuana plants on [Appellant]'s property without a warrant?

(Appellant's Brief at 11).[2]

_____

[2] On appeal, Appellant withdrew any prior challenge to the voluntariness of his statements to police. (*See id.* at 11, 17).

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Williams*, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (internal citations omitted).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Id.* at 27. The reviewing court's scope of review is limited to the evidentiary record of the pre-trial hearing on the suppression motion. *In re L.J.*, 622 Pa. 126, 79 A.3d 1073 (2013). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa.Super. 2019) (quoting *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa.Super. 2013)). If appellate review of the suppression court's decision "turns on allegations of legal error," then the trial court's legal conclusions are nonbinding on appeal and subject to plenary review. *Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa.Super. 2017) (quoting *Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa.Super. 2015), *appeal denied*, 635 Pa. 750, 135 A.3d 584 (2016)).

Appellant acknowledges that the police lawfully entered his property

while chasing a fleeing felon in hot pursuit.[3]  Nevertheless, Appellant argues that police still needed a search warrant before seizing the marijuana plants located on his property.  Appellant claims that the police failed to establish a "lawful right to access" his marijuana under the plain view exception to the warrant requirement.  Appellant insists that the plain view exception did not permit police to seize his marijuana plants without a warrant in the absence of exigent circumstances.  Appellant concludes that the police improperly seized his marijuana plants without a warrant, and thus this Court should reverse the court's order denying suppression relief.  We disagree.

"[T]he Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures and, to that end, a search conducted without a warrant is generally presumed unreasonable unless it is undertaken pursuant to a recognized exception to the warrant requirement." ***Commonwealth v. Lechner***, 685 A.2d 1014, 1016 (Pa.Super. 1996).

"The 'plain view' doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable...."

_____

[3] At the conclusion of the suppression hearing, Appellant conceded that "the Trooper was legitimately on [Appellant]'s property."  (N.T. Suppression Hearing, 8/23/18, at 29).  In his brief, Appellant reiterates that the police lawfully entered his property while in hot pursuit of a fleeing felon.  (**See** Appellant's Brief at 16, 18, 22).  Thus, we need not address the "hot pursuit" exception to the warrant requirement or the lawfulness of the initial police entry onto Appellant's property.

*Commonwealth v. McCree*, 592 Pa. 238, 247, 924 A.2d 621, 627 (2007) (quoting *Horton v. California*, 496 U.S. 128, 133, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112, 120 (1990)). "The plain view doctrine provides that evidence in plain view of the police can be seized without a warrant...." *Commonwealth v. Anderson*, 40 A.3d 1245, 1248 (Pa.Super. 2012), *appeal denied*, 616 Pa. 666, 51 A.3d 837 (2012).

> This doctrine permits a valid warrantless seizure of an item where: (1) the police have not violated the Fourth Amendment in arriving at the location from which the item could be viewed; (2) the item is in plain view; (3) the incriminating character of the item is immediately apparent; and (4) the police have a lawful right of access to the item itself.

*Commonwealth v. Jones*, 605 Pa. 188, 201, 988 A.2d 649, 656 (2010), *cert. denied*, 562 U.S. 832, 131 S.Ct. 110, 178 L.Ed.2d 32 (2010). *See also Commonwealth v. Miller*, 56 A.3d 424, 429 (Pa.Super. 2012) (stating: plain view doctrine permits warrantless seizure of object when officer views object from lawful vantage point, it is immediately apparent to him that object is incriminating, and officer has lawful right of access to object).

Significantly: "There can be no reasonable expectation of privacy in an object that is in plain view. To judge whether the incriminating nature of an object was immediately apparent to the police officer, reviewing courts must consider the totality of the circumstances." *Commonwealth v. Colon*, 777 A.2d 1097, 1103 (Pa.Super. 2001) (quoting *Commonwealth v. Petroll*, 558 Pa. 565, 738 A.2d 993 (1999)). "In viewing the totality of the circumstances,

- 5 -

the officer's training and experience should be considered." ***Miller, supra*** at 430 (citing ***Commonwealth v. Liddie***, 21 A.3d 229 (Pa.Super. 2011) (*en banc*)). "[T]here is no reason [a police officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen." ***Colon, supra*** at 1103.

Further, the plain view doctrine is concerned with the "seizure of evidence rather than a search without a warrant." ***Id.  See also Commonwealth v. Kendrick***, 490 A.2d 923, 927 (Pa.Super. 1985) (explaining seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming there is probable cause to associate property with criminal activity; experienced officer trained in narcotics can seize object, when he observes it from lawful vantage point, and holder of object tries to conceal object; given incriminating character of object, officer could open object and examine contents).

In ***Commonwealth v. Weik***, 521 A.2d 44 (Pa.Super. 1987), this Court explained that cases involving the plain view doctrine fall into two categories:

> The first line of cases involves those situations in which the "view" takes place **after an intrusion** into a constitutionally protected area.  Under this line of cases if the original intrusion is justified, such as by consent, **hot pursuit**, warrant or other, objects sighted in plain view will be admissible so long as the view was inadvertent.
>
> The second line of cases involves situations where the view takes place **before any intrusion** into a constitutionally protected area.  These cases are distinguishable from the first line of cases in two respects.  First, because no intrusion into a constitutionally protected area takes place, Fourth

> Amendment rights are not involved and the requirement that the view be inadvertent is not applicable. Secondly, the warrantless seizure of evidence cannot be justified by the plain view alone.

*Id.* at 46 (emphasis added).

Instantly, Trooper Malek of the Pennsylvania State Police ("PSP") testified at a suppression hearing as follows: He has been employed with PSP since 2006, and he is currently a patrol section supervisor. (*See* N.T. Suppression, 8/23/18, at 4). Trooper Malek received training in the identification of marijuana based upon its odor and its physical appearance. (*Id.* at 5). In addition, he received SHIELD (Safe Highways Initiative thru Effective Law Enforcement and Detection) interdiction training. (*Id.*) The trooper estimated that he has identified marijuana between 50-100 times. (*Id.*)

On August 7, 2018, Trooper Malek and numerous other members of PSP received information concerning the location of Jeremy Chambers, a suspect in another matter. (*Id.* at 6). A police officer in an unmarked car saw Mr. Chambers driving an ATV. (*Id.* at 10). Mr. Chambers had several outstanding felony-warrants for his arrest, including warrants for kidnapping, aggravated assault, and robbery. (*Id.* at 9). Trooper Malek and other members of PSP were in pursuit of Mr. Chambers to arrest him on these warrants. (*Id.* at 11). Trooper Malek explained that he had concerns that Mr. Chambers would not stop his vehicle, and he might eventually kill someone. (*Id.*)

While on pursuit, Trooper Malek could hear Mr. Chamber's ATV, and he

observed ATV tracks on the ground. (*Id.* at 12). Based on these observations, Trooper Malek followed the ATV tracks which ultimately led him onto Appellant's property. (*Id.*) Trooper Malek explained that he only entered Appellant's property because he was in hot pursuit of the fleeing felon, Mr. Chambers. (*Id.* at 14). Once on Appellant's property, Trooper Malek "immediately stopped and, in [his] own mind said to [himself], 'Man, this smells like my evidence room.'" (*Id.* at 13). Trooper Malek immediately recognized by sight and smell that there were marijuana plants growing on Appellant's property. (*Id.*) After making this discovery, Trooper Malek saw Appellant standing on the back porch of his house. (*Id.* at 15).

Trooper Malek explained the reason for his presence on Appellant's property. (*Id.* at 16). After his explanation, Trooper Malek told Appellant, "Well, we have another problem," regarding the marijuana plants growing on Appellant's property. (*Id.*) Appellant responded, "Yeah, I [kind of] figured that you saw them." (*Id.*) Appellant admitted the plants belonged to him for his own personal use, and then he asked the trooper for 10-15 minutes to remove them. (*Id.* at 17). Subsequently, Trooper Malek telephoned PSP vice unit members to come and assist him. (*Id.* at 19). The vice unit processed the plants by photographing them and ultimately removing them without obtaining a warrant. (*Id.*)

Our review of the record confirms that this case falls within the first category of plain view cases, where Trooper Malek's view of Appellant's

marijuana plants occurred after his lawful intrusion into Appellant's yard. ***See Weik, supra***. Based on the totality of the circumstances, considering Trooper Malek's training and experience, he immediately identified the plants as marijuana. ***See Miller, supra***. Trooper Malek's identification arose from a lawful vantage point after he lawfully entered Appellant's property while in hot pursuit. ***See Weik, supra***. Once the trooper entered Appellant's property, he inadvertently discovered the marijuana plants. ***Id.*** Under these circumstances, police were permitted to lawfully seize the marijuana plants in plain view, without securing a warrant.[4] ***See Jones, supra***; ***Miller, supra***. The record supports the court's suppression ruling. ***See Williams, supra***. Accordingly, we affirm.

Judgment of sentence affirmed.

---

[4] To the extent that Appellant relies on ***Commonwealth v. English***, 839 A.2d 1136 (Pa.Super. 2003) to support his claim that exigent circumstances were required to justify the warrantless seizure of the marijuana plants, we disagree. The ***English*** case is readily distinguishable. The ***English*** Court held that its facts fell within the second category of cases, where police observed the incriminating item in plain view before any intrusion occurred. We have already decided that this case falls within the first category of plain view cases. Consequently, ***English*** is not controlling.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date:  _7/27/2021_