J-S36021-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERIK LOPEZ-TORRALBA, | |
| Appellant | No. 2769 EDA 2016 |

Appeal from the Judgment of Sentence of August 4, 2016
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0003427-2015

BEFORE:  PANELLA, J., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                    **Filed July 3, 2017**

Appellant, Erik Lopez-Torralba, appeals from the judgement of sentence entered August 4, 2016, contending that the trial court erred in denying his motion to suppress evidence.  Upon careful consideration, we affirm.

The trial court summarized the facts of this case as follows:

Detective James Wood testified that, on April 14, 2015, he was participating in the investigation of a large-scale heroin trafficking operation in Norristown, Montgomery County, Pennsylvania.  At approximately 1:10 p.m. on that date, Detective Wood was sitting in an unmarked car in the vicinity of Marshall and Arch Streets, waiting for uniformed officers to make a traffic stop of a 2005 Acura suspected to be transporting a large quantity of heroin.  Before the traffic stop could take place, the Acura pulled into a parking spot on Arch Street.  There were three people inside the vehicle: the driver—subsequently identified as [Appellant]—and two passengers.

Accompanied by two uniformed officers, Detective Wood—who was in plain clothes with a bullet-proof vest with the word "Police" written on the front—approached the Acura. While the uniformed officers dealt with the passengers, Detective Wood went to the driver's side of the Acura, where he encountered [Appellant]. The detective identified himself, informed [Appellant] that he was conducting a drug investigation, and directed [Appellant] to get out of the Acura, following which the detective performed a "pat down" of [Appellant] for officer safety. The "pat down" did not lead to the discovery of any weapons. Detective Wood testified that, although he was armed himself, his gun was concealed inside his police vest. The detective testified that he did not display his weapon at any point during his entire encounter with [Appellant].

Detective Wood testified that his conversation with [Appellant] on Arch Street was conducted in a calm manner, with no threats made and no raised voices. The detective testified that he did not put his hands on [Appellant] apart from the "pat down." The detective testified that, during the course of this conversation, he asked [Appellant] for permission to search the Acura, and that [Appellant] verbally consented to the search.

Detective Wood, however, did not search the Acura at this point, but instead directed that [Appellant] be placed inside a marked police vehicle and transported to the Norristown Police Station. The detective himself then drove [Appellant's] Acura to the police station, a trip of approximately one minute.

Arriving at the police station at approximately 1:25 p.m., Detective Wood retrieved a pre-printed "consent to search form" from another officer. The detective then directed [Appellant] to sit in the front passenger seat of the Acura while the detective sat in the driver's seat. Detective Wood testified that he did this so that [Appellant] would not feel intimidated by all of the other officers moving around the station. Inside the Acura, Detective Wood asked [Appellant] if he would be willing to provide a written consent to searches of his car, residence and cellular telephone. [Appellant] agreed to provide a written consent to search.

Detective Wood handwrote on the form specific identifying information for [Appellant's] Acura, his address, and his cellular telephone. The detective did not testify as to his asking [Appellant] for any identifying information concerning the Acura

(i.e., the VIN number or registration number), and plainly had no reason to do so, as the license number and VIN number were readily apparent on the vehicle itself. In regard to [Appellant's] phone, the detective testified that he had noted the presence of an iPhone on the center console of the vehicle and had asked [Appellant] if it was his. [Appellant] had replied that it was. The [Appellant] also provided Detective Wood with his address.

Detective Wood testified that—prior to having [Appellant] sign the consent to search form—he read the form aloud to [Appellant] and also asked [Appellant] to read it himself. On its face, the form stated in pre-printed language:

I understand that I have the right to refuse the consent to search described above and the right to refuse to sign this form.

I further state that no promises, threats, force, physical or mental coercion of any kind whatsoever have been used against me to get me to consent to the search described above or to sign this form.

Detective Wood testified that he verbally informed [Appellant] that he was free to revoke his consent to search. Pressed on this issue in cross-examination by [defense counsel], Detective Wood testified: "I told him that he could stop the search at any time." [The trial court] fully credited Detective Wood's testimony in its entirety.

[Appellant] signed the "consent to search" form, which was entered into evidence as CS-1. The detective testified that the handwritten identification information for the Acura, [Appellant's] address, and the cell phone [were] all written on the form at the time [Appellant] signed it[.]

Detective Wood testified that his entire discussion with [Appellant] inside the Acura was conducted calmly, with no threats, raised voices, or weapons displayed, and that [Appellant] was not handcuffed during the discussion.

After [Appellant] signed the "consent to search" form, [Appellant] and Detective Wood exited the Acura. With [Appellant] standing to the side, Detective Wood and another officer conducted a fifteen minute search of the Acura, discovering nothing illegal at that time.

> Retaining [Appellant's] cellular telephone for a subsequent search, Detective Wood then gave [Appellant] the keys to his Acura and asked him to drive to his residence for the search to which [Appellant] had consented. [Appellant] agreed, and Detective Wood and other officers followed [Appellant] to his home in separate vehicles. After arriving at [Appellant's] home, Detective Wood and other officers searched the residence, ultimately discovering a large amount of what [] transpired to be heroin. A subsequent follow-up search of the Acura led to the discovery of more heroin concealed in the vehicle.

Trial Court Opinion, 12/15/2016, at 4-8 (internal citation omitted).

The relevant procedural history of this case is as follows. Appellant was charged with two counts of possession of heroin with intent to deliver,[1] two counts of conspiracy to possess heroin with intent to deliver,[2] and one count of possession of drug paraphernalia.[3] On February 26, 2016, Appellant filed an omnibus pre-trial motion, which included a motion to suppress the evidence found in his vehicle, cellular telephone, and residence. On March 22, 2016, a suppression hearing was held. By written order that same date, the suppression court denied Appellant's motion to suppress. On March 30, 2016, a jury convicted Appellant on all charges. On August 4,

---

[1] 35 P.S. § 780-113(A)(30).

[2] 18 Pa.C.S.A. § 903(a)(1).

[3] 35 P.S. § 780-113(a)(32).

2016, the trial court imposed an aggregate sentence of not less than nine nor more than 18 years' imprisonment. This timely appeal followed.[4]

Appellant raises two issues for our review:

Did the [trial] [c]ourt commit reversible error by failing to grant a motion to suppress evidence on a theory that [] Appellant failed to make a knowing, voluntary and intelligent consent for the police to search his residence, automobile and cellular telephone (which searches resulted in the Commonwealth obtaining incriminating evidence)[?]

Did the [trial] court commit reversible error by failing to suppress evidence on a theory that [] Appellant was not appropriately advised of his rights pursuant to **Miranda v. Arizona**, 384 U.S. 436 (1966) and its Pennsylvania progeny prior to being asked to provide incriminating information *(i.e.,* information regarding the Appellant's residence, automobile and cellular telephone which resulted in the Commonwealth obtaining incriminating evidence)[?]

Appellant's Brief at 2.

Appellant's claims challenge an order denying his suppression motion. "Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal

_____

[4] On October 12, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b). Appellant subsequently requested, and was granted, an extension of time in which to prepare the concise statement. On November 17, 2016, Appellant filed his concise statement. On December 14, 2016, the suppression court issued a statement adopting its findings of facts and conclusions of law. **See** Pa.R.A.P. 1925(a)(1) (permitting trial court to request that the judge who ruled on the contested matter issue a Rule 1925 opinion and permitting adoption by reference of previously filed rationale). Appellant's two issues on appeal were included in his concise statement.

conclusions drawn from those facts are correct." ***Commonwealth v. Stem***, 96 A.3d 407, 409 (Pa. Super. 2014) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the suppression court." ***In re L.J.***, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). "We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." ***Commonwealth v. Gary***, 91 A.3d 102, 106 (Pa. 2014) (citation omitted). On a motion to suppress, the burden is on the Commonwealth to prove, by a preponderance of the evidence, that the evidence seized from Appellant was legally obtained. ***See Commonwealth v. Howard***, 64 A.3d 1082, 1087 (Pa. Super. 2013), *appeal denied*, 74 A.3d 118 (Pa. 2013)(citation omitted).

Appellant contends that the searches of his residence, car, and cellular telephone were illegal for two reasons. First, he contends that he did not knowingly, voluntarily, and intelligently consent to such searches. Second, he asserts that he was not advised of his rights pursuant to ***Miranda*** before being asked to provide incriminating information relating to his residence, automobile, and cellular telephone. Thus, Appellant argues that the incriminating evidence recovered from these searches should have been suppressed. Appellant's Brief at 18. The Commonwealth contends that Appellant's consent was voluntarily given after police informed him verbally

and in writing that he had the right to refuse consent, and he affirmed in writing that he was not coerced. Commonwealth's Brief at 11.

As this Court has explained, "the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protects citizens from unreasonable searches and seizures." *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa. Super. 2013). Thus, a search conducted without a warrant is unconstitutional unless an established exception applies. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). One exception to the requirement of a warrant is a search conducted pursuant to consent. *See id.* at 219. If an individual gives valid consent, then the ensuing search is reasonable and the individual's constitutional rights are not violated by police conduct. *See Florida v. Jimeno*, 500 U.S. 248, 250-251 (1991). "To establish a valid consensual search, the prosecution must first prove that the consent was given during a legal police interaction, or if the consent was given during an illegal seizure, that it was not a result of the illegal seizure; [] second, [the prosecution must demonstrate] that the consent was given voluntarily." *Commonwealth v. Newton*, 943 A.2d 278, 283-284 (Pa. Super. 2007).

Appellant does not dispute that the initial police encounter (an investigative detention) was lawful or that the detective had reasonable suspicion to support his actions. Thus, our analysis focuses solely upon

whether Appellant's consent to search his car, residence, and cellular telephone, given during this detention, was voluntary.

It is well-settled that the issue of whether a consent to search has been voluntarily given is a question of fact that is determined on a case-by-case basis from the totality of the circumstances. *See, e.g.*, *Commonwealth v. Strickler*, 757 A.2d 884, 901 (Pa. 2000). To demonstrate that consent was voluntary, the evidence must establish "[t]hat a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne[.]" *Id.* at 901. This Court has set forth numerous factors to consider when determining if consent were voluntary. Specifically, we consider:

> 1) the presence or absence of police excesses;  2) whether there was physical contact;  3) whether police directed the citizen's movements;  4) police demeanor and manner of expression;  5) the location of the interdiction;  6) the content of the questions and statements;  7) the existence and character of the initial investigative detention, including its degree of coerciveness;  8) whether the person has been told that he is free to leave;  and 9) whether the citizen has been informed that he is not required to consent to the search.

*Commonwealth v. Kemp*, 961 A.2d 1247, 1261 (Pa. Super. 2008) (noting overlap of analysis in assessing whether consent was voluntary and whether seizure occurred).  We consider those factors *seriatim*.

For the first factor, the record does not disclose police excesses.  At the traffic stop, two uniformed officers accompanied the detective.  N.T., 3/22/16, at 18.  The detective was dressed in plainclothes and wearing a

bullet-proof vest with the word "Police" written across the chest. *Id.* at 17. There was at least one, perhaps two, marked police vehicles and two unmarked vehicles at the scene. *Id.* at 18-19. Appellant was not surrounded by a swat team, or even several officers, and was approached only by the detective on the driver's side. *Id.* at 20-21. While there was undoubtedly a police presence, this did not amount to police excess. Therefore, this factor weighs in favor of voluntariness.

With regard to the second factor, there was no physical contact between Appellant and the police. The detective testified that he did not make physical contact with Appellant apart from the "pat-down" conducted for officer safety. *Id.* at 22-24. The detective does not remember if Appellant were handcuffed in the back of the police vehicle while being transported to the Norristown Police Station. *See Id.* at 25. Since the trial court credited the detective's testimony that there was no physical contact with Appellant apart from the pat-down search, this factor weighs in favor of voluntariness.

As to the third factor, there is evidence that the detective controlled and directed Appellant's movements. The detective ordered the Appellant out of his vehicle to perform the "pat-down." N.T., 3/22/16, at 22. The detective also directed Appellant to be placed inside a marked police vehicle and transported to the Norristown Police Station. Trial Court Opinion, 12/15/2016, at 5. Once at the police station, the detective directed that

Appellant sit in the front passenger seat of Appellant's vehicle, while the detective sat in the driver's seat. *Id.* at 6. Because the detective retained control over Appellant and directed his movements, this factor weighs against voluntariness.

Regarding the fourth factor, this Court concludes that the demeanor of the police was not coercive. The detective informed Appellant that he was conducting a drug investigation and his conversation with Appellant was conducted in a calm manner, with no threats made and no raised voices. N.T., 3/22/16, at 22. Although the detective was armed, he never displayed his weapon, and to the contrary, his gun was concealed in his vest and not visible. *Id.* 23. Additionally, the detective testified that he placed Appellant in the Acura when they arrived at the police station specifically so he would not feel intimidated by the other officers moving around the premises. *Id.* 27. The detective testified that his entire discussion with the Appellant inside the Acura was conducted calmly, with no threats, raised voices, or weapons displayed, and that Appellant was not handcuffed during the discussion. Trial Court Opinion, 12/15/2016, at 7. Therefore, the detective's demeanor and manner of expression weigh in favor of voluntariness.

The fifth factor, *i.e.*, location of the encounter, weighs in favor of voluntariness. Specifically, the initial encounter occurred in the early afternoon on a public street, where the Appellant was plainly visible to

pedestrians and motorists. N.T., 3/22/16, at 18. During this encounter, Appellant gave verbal consent for the detective to search his car. *Id.* at 24. Subsequently, the Appellant was transferred to the police station, but was never taken inside. *Id.* at 27. Instead, he was placed in his own car and given a written consent form authorizing a search of his car, residence, and cellular telephone. *Id.* at 27-29. There are no factors that lead this Court to conclude that the location of the encounter somehow overwhelmed Appellant's capacity to make an unconstrained choice. Therefore, this factor weighs in favor of voluntariness.

Concerning the sixth factor, which looks at the communication between the detective and Appellant, this Court concludes there was no confusion regarding the requests for consent. The detective, after informing Appellant that he was conducting a drug investigation, simply asked if he could search the car, and Appellant agreed. N.T., 3/22/16, at 24. At the police station, the detective presented Appellant with a consent to search form, which indicated identifying information regarding Appellant's car, residence, and cellular telephone. *Id.* at 28-33. Prior to Appellant signing the consent form, the detective verbally explained it to him and read it aloud. *Id.* 28. The Appellant also read the form himself before signing it. *Id.* Thus, there is nothing present in the interaction between the detective and Appellant that would create confusion regarding the detective's

intentions to search Appellant's car, residence, and cellular telephone. Therefore, this factor weighs in favor of voluntariness.

With regard to the seventh factor, we conclude that the request to search was directly related to the initial investigative detention. The detective was waiting for uniformed officers to make a traffic stop of a 2005 Acura, which he reasonably suspected was involved in transporting a large quantity of heroin. Trial Court Opinion, 12/15/2016, at 4. Once the car was pulled over, the officers and detective approached the car and subsequently informed the Appellant that they were conducting a drug investigation. *Id.* at 5. Thus, the detective's request to search the car, residence and cellular telephone, was directly related to the investigative detention. Therefore, this factor weighs in favor of voluntariness.

The eighth factor, regarding whether the Appellant was told he was free to leave, weighs against voluntariness. There is no indication that Appellant was told he was free to leave. The detective testified that Appellant was not physically able to leave due to the placement of the police cars and a dumpster around his Acura. N.T., 3/22/16, at 44. The detective also testified that he did not inform the Appellant that he was free to leave. *Id.* Rather, he directed that Appellant be transported to the police station in the back of a marked police car. *Id.* at 45. Thereafter, Appellant waited in the back of the police vehicle for five to ten minutes until he was removed and placed in the front passenger side of his car. *Id.* At this point, as the

detective testified, he was in custody and not free to go. *Id.* at 47. Thus, this factor weighs against voluntariness.[5]

Finally, the ninth factor, whether the Appellant was informed that he was not required to consent to the search, weighs in favor of voluntariness. As our Supreme Court has noted, this factor is especially important. *See Strickler*, 757 A.2d at 901, *citing* *U.S. v. Mendenhall*, 446 U.S. 558 (1990); *Florida v. Bostick*, 501 U.S. 429, 432 (1991). In this case, the detective testified that, prior to having Appellant sign the consent form, he read the form aloud to him and asked Appellant to read it himself, which he did. N.T., 3/22/16, at 28. On its face, the form stated in pre-printed language:

> I understand that I have the right to refuse the consent to search described above and the right to refuse to sign this form.
>
> I further state that no promises, threats, force, or physical or mental coercion of any kind whatsoever have been used against me to get me to consent to the search described above or to sign this form.

Commonwealth's Exhibit CS-1.

The detective further testified that he verbally informed the Appellant that he was free to revoke his consent to search. N.T., 3/22/16, at 48. Pressed on the issue during cross-examination, the detective testified: "I told him that he could stop the search at any time." *Id.* at 52. Thus,

_____

[5] Although Appellant was never advised he was free to leave during the encounter, it is equally clear that departure was never used as a bargaining chip to secure Appellant's consent.

- 13 -

Appellant received both a written and verbal instruction that he was free to refuse to consent to these searches. Furthermore, he was informed verbally that he could end the searches at any time. Appellant never expressed any concerns regarding the searches, and willfully led police officers to his house. Therefore, this Court concludes that the Appellant was informed, more than once, and understood that he had the right to refuse consent. Thus, this factor weighs in favor of voluntariness.

In light of the foregoing analysis regarding the factors needed to be considered, and the weight of those factors, we conclude that the suppression court's analysis is supported by the record and free of legal error. Our Supreme Court has repeatedly emphasized the importance of the fact that a defendant was informed that he could refuse a search. *E.g., Commonwealth v. Mack*, 796 A.2d 967, 971-972 (Pa. 2002), *citing Strickler*, 757 A.2d at 901. In this case, the totality of the circumstances suggest that Appellant was aware that he had the right to refuse a search of his car, residence, and cellular telephone, yet, he still elected to consent to the searches. This important finding, in combination with several other factors that support a finding of voluntariness, outweigh the less significant factors that weigh against voluntariness. Thus, Appellant's consent to the searches was voluntary.

In sum, the Commonwealth demonstrated that Appellant voluntarily consented to the challenged searches during a legal police interaction.

Therefore, the consent is valid and the suppression court correctly denied Appellant's motion.

We turn to Appellant's second issue, which asserts that he should have received **Miranda** warnings before being asked to provide information relating to his residence, cellular telephone, and car.[6]

Statements made during custodial interrogation are presumptively invalid unless they are preceded by the defendant being informed of his **Miranda** rights. **See Commonwealth v. Williams**, 941 A.2d 14, 30 (Pa. Super. 2008). The "standard for determining whether an encounter with police is custodial or police have initiated custodial interrogation, so as to trigger **Miranda** requirements, is [an] objective one based on [the] totality of circumstances, with due consideration given to [the] reasonable impression conveyed to [the] person interrogated." **Commonwealth v. Mannion**, 725 A.2d 196, 200 (Pa. Super. 1999). "Custodial interrogation" is questioning that is likely or expected to elicit a confession or an incriminating statement. **Id**. at 200. In order to trigger the safeguards of

_____

[6] Although Appellant argues that he was entitled to **Miranda** warnings before providing information about his residence, cellular telephone and car, we note that Appellant was not asked to provide information regarding the phone or his car before consenting to the search. Instead, the police had possession of the car and the cellular telephone (found on the center console of the car). Appellant was only asked whether he consented to the search of those items. Thus, Appellant's argument regarding the need for **Miranda** warnings has no applicability to the phone or the car.

*Miranda*, there must be both "custody" and "interrogation." *Commonwealth v.Turner*, 772 A.2d 970, 973 (Pa.Super. 2001).

Certain questions asked by authorities do not require *Miranda* warnings. For instance, "[b]iographical data necessary to complete booking or pretrial services" fall within the "routine booking question" exemption of questions not within *Miranda's* protections. *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990). Here, when Appellant gave verbal consent for the search of his residence, he was asked to provide his address merely for the purpose of completing the consent form. This is analogous to information routinely asked during booking inquiries.

We agree with the finding of the trial court that the Appellant was not subjected to custodial interrogation at that time. Trial Court Opinion, 12/15/2016, at 9. There was no request for a confession and there were no questions concerning details of the suspected crime(s). This Court is not aware of any case law supporting the claim that a police officer may not ask an individual about his residential address for purposes of securing his consent to search. Furthermore, Appellant, in his brief, concedes "[t]he case law does not require that a subject must be advised of his rights under *Miranda* prior to consenting to a search." Appellant's Brief at 18 (emphasis omitted). Thus, Appellant's *Miranda* claim fails.

In sum, we conclude that the trial court correctly determined that Appellant's consent was knowing, voluntary, and intelligent. Further, we

conclude that the detective was not required to give ***Miranda*** warnings prior to obtaining identifying information regarding Appellant's residence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/3/2017